22 C. C. P. A. (Patents)

## In re ALLEN.

### Patent Appeal No. 3440.

Court of Customs and Patent Appeals.
April 8, 1935.

Theodore W. Miller, of Chicago, Ill. (Charles M. Thomas, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, rejecting claims 6, 7, 8, 9, 10, 33, and 34 of appellant's application for patent, the rejection being upon the ground that said claims lacked patentability in view of the cited prior art. Certain claims of the application were allowed by the Examiner, and the Board reversed the Examiner upon two claims rejected by him, holding that they were allowable.

Claims 6, 7, 8, 9, and 33 are illustrative and read as follows:

"6. In an apparatus of the character described, the combination of an aspirator for combining a pair of fluids having a relative difference in density, a downflow tube for conveying the combined fluids to a lower level and an upflow tube of approximately the same cross sectional area as the downflow tube communicating with the downflow tube for carrying the fluids to an intermediate level just below said aspirator.

"7. In an apparatus of the character described, the combination of an aspirator for combining a pair of fluids having a relative difference in density, a downflow tube for conveying the combined fluids to a lower level and means communicating with the downflow tube for confining the flow therefrom of both fluids to an intermediate level just below said aspirator to provide a predetermined relative density of the up fluid with respect to the density of the down fluid.

"8. In an apparatus of the character described, the combination of an aspirator for combining a pair of fluids having a relative difference in density, a downflow tube for conveying the combined fluids to a lower level and an upflow tube communicating with the downflow tube for carrying the fluids to an intermediate level just below said aspirator, the cross-sectional areas of the upflow tube bearing the predetermined ratio of approximately one to corresponding cross-sectional areas of the downflow tube.

"9. In an apparatus of the character described, the combination of an aspirator for combining a pair of fluids having a relative difference in density, a downflow tube for conveying the combined fluids to a lower level and an upflow tube communicating with the downflow tube for carrying the fluids to an intermediate level just below said aspirator, the cross-sectional area of the upflow tube for a given depth bearing a predetermined ratio of approximately one to the cross-sectional area of the downflow tube at the same depth.

"33. In an apparatus of the character described, the combination of an aspirator for combining a pair of fluids having a relative difference in density, a downflow tube for conveying the fluids to a lower level, an upflow tube communicating with the downflow tube for carrying the fluids to a level just below the aspirator and a discharge receptacle, the upflow tube discharging thereinto above the fluid level thereof."

The references cited are: Hyatt, 326,221, September 15, 1885; Bradley, 996,560, June 27, 1911; Hoveman et al. (Br.), 276,137, August 25, 1927; Allen, 1,236,645, August 14, 1917; Allen, 1,256,862, February 19, 1918; McElroy, 610,849, September 13, 1898; Otto (Fr.), 388,962, June 15, 1908; Otto (Fr.), 423,223, February 10, 1911.

With respect to claims 6, 8, and 9, we would observe that, as above quoted, they are in the form finally considered by the Examiner and the Board of Appeals, as appears from the record, although no formal amendments of the original claims seem to have been made, which original claims are printed in the record under the heading "Rejected Claims." In our discussion of said claims, we will, of course, consider them in the form above quoted, and will treat the amendments as having been regularly made and accepted by the Patent Office.

Appellant's claimed invention is described by the Board of Appeals in its decision as follows:

"The present application appears to be in the nature of an improvement on applicant's prior patents. In the apparatus disclosed in Figs. 1, 2, 3 and 11 of the present application there is provided a water storage chamber and above the storage chamber a water receiving chamber. Extending from the storage chamber into the water receiving chamber is a pipe having at its upper end inner and outer bowls between which is formed a converging water passage. The bowls are provided with a central hollow shank through which a chemical for treating the water may be supplied. This shank is extended upwardly and threaded to a rod which passes through a threaded gear by means of which the bowls may be raised and lowered. Surrounding the shank of the bowls and supported by a spider is an annular air chamber to which air may be supplied by a blower or may be supplied through an upwardly extending

pipe opening to the atmosphere. Extending downwardly from the bottom of the annular air chamber are pipes which terminate in the space between the inner and outer bowls, the water as it flows into the space between the bowls causing aspirating effect upon the air. By the provision of the spider the water in the receiving chamber is permitted to pass over both the outer and inner lips of the inner and outer bowls. As shown in Fig. 11 the pipe extending downwardly from the bowls communicates at its lower end with an upturned pipe which ends near the bottom of the water receiving chamber and forms what may be considered a U-tube, the two legs of which apparently are of substantially the same cross-section. From the upper end of the short leg the air which is entrapped in the water may be discharged, the water descending through a space between the short leg and an outer casing into the water-storage chamber. By means of the apparatus of the present application applicant states that he is able to secure a more intimate mixing of the water and air."

In addition to the foregoing, it should be stated that claims 33 and 34 embrace an element not referred to by the Board, viz., that the upflow tube discharges into the discharge receptacle at a point above the fluid level of the latter.

While it will be observed that a large number of references are cited, it is conceded that the only ones pertinent to the question before us are Hyatt, Bradley, and Hoveman, the other references having been cited with respect to claims not here on appeal.

The patent to Hyatt relates to the art of purifying water and discloses an apparatus comprising a U-tube, one leg of which is provided at the upper end with an open conical screen into which water is discharged by a pump. Located below the screen there is a series of small tubes in such a position that the water passing through the screen will drop into them. The patentee states that these tubes operate upon the principle of Sprengle air pumps. Below these tubes a bed of gravel is provided through which the air and water pass. Below this bed of gravel there is provided a series of screens. Below these screens, and extending through the discharge leg of the U-tube, a series of deflecting plates is provided. The patentee states:

"While I have illustrated in the pipe A (the U-tube) a bed of stone, K, screens L, and deflecting plates M, it is not to be understood that all of these devices are to be used simultaneously, although they may be so employed, if desired.

"I have the stone, screens, and blades M as illustrating the varied means which may be employed to keep the water in a constant state of agitation, so as to effectually accomplish the union of the air and water. * * *"

The patent does not disclose an aspirator as a part of the apparatus. The discharge leg of the U-tube is open at the top to permit the discharge of air therefrom. The water is discharged from this leg into a tank by means of a connection between said discharge leg and said tank. The drawings show that said connection is below the level of the water in the discharge tank. The theory of Hyatt's invention was that, by the use of the apparatus he disclosed, a chemical action resulted between the air and the water. The patent states:

"* * * It is well understood that when air and water are intimately combined there will be a chemical action, the water absorbing the oxygen of the air and the impurities in the water being consumed or rendered inert. * * *

"The devices arranged within the pipe or receptacle A for effecting the chemical union of the air and water may vary in their construction to a considerable extent, the main purpose being to keep the water in a constant state of agitation in connection with the air, and to prevent the escape of the latter until its desired union with the water has been effected. * * *"

Hyatt discloses another form of his invention which is hereinafter referred to and considered.

The patent to Bradley relates to an apparatus for purifying water by the use of ozone, and it appears from his specification that he, too, operated upon the theory of purification of the water through chemical action. An aspirator is shown, below which is a U-shaped tube. The combined ozone and water flow to the bottom of the tube and pass into a dome-shaped chamber which is substantially at right angles with the legs of the U-shaped tube; or, in other words, the dome-shaped chamber constitutes the bottom of the U. As the ozone and water travel in a horizontal direction through the dome-shaped chamber, the excess air and other gases are released and collect in the dome of the chamber and are then discharged into a lime tower; the sterilized wa-

ter then passes from the chamber upward into the discharge leg of the tube and is discharged at a point below the aspirator.

The British patent to Hoveman et al. relates to apparatus for the aeration of water. The specification and drawings disclose an air inlet chamber, a water inlet chamber, and an aeration chamber at successively lower levels. From the floor of the water inlet chamber a number of water pipes having flared upper ends depend vertically into the aeration chamber, where each dips nearly to the bottom of a separate water-sealed vessel "of substantial depth." Tapering air pipes communicating with the air inlet chamber and adjustable as to height depend through the water inlet chamber and project centrally at their lower ends into the flared upper ends of said water pipes, leaving an annular space between the concentrically arranged pipes for the flow of water. The aerated water flowing out of the bottom of said water pipes is discharged through the upper ends of the sealing vessels surrounding said water pipes. These sealing vessels, according to the drawings, extend upwardly to about one-third the height of the aeration chamber, and the aerated water is discharged from said sealing vessels at a level higher than the level of the water collected in the aeration chamber. Near the lower part of said aeration chamber and below the water level thereof is an outlet for the aerated water, and near the upper end of said chamber is an outlet for the excess air which has separated from the water.

The original decision of the Examiner rejected claims 6, 7, 8, 9, and 10 upon Bradley and also upon Hoveman. With respect to the rejection upon Hoveman, he held that no invention would be involved in extending the upflow tube disclosed by the patent to a level just below the aspirator. Claims 33 and 34 were also rejected upon Hoveman. The Examiner further stated that the downflow and upflow tubes of Hoveman constitute the full equivalent of a U-tube.

On November 7, 1932, appellant appealed from said decision of the Examiner to the Board of Appeals.

On June 8, 1933, appellant filed an affidavit made by himself and an affidavit made by one Edgar L. Tenney, both of which affidavits were accompanied by exhibits illustrating the difference between the structures of the references, including the Hyatt patent, and appellant's structure. On June 12, 1933, the case was remanded to the Examiner, and on July 8, 1933, the Examiner made a "Supplemental Examiner's Statement," from which it appears that amendments to original claims 6, 8, and 9 were treated as admitted, the other claims here on appeal remaining in their original form; in said supplemental statement said claims so considered as amended were rejected as being unpatentable over Hyatt, in view of Bradley or Hoveman. As to claims 7, 10, 33, and 34, the Examiner adhered to his original rejection upon Bradley and also upon Hoveman, making no reference to Hyatt.

The Board of Appeals held that all of the claims here involved were unpatentable over Hyatt in view of Bradley or Hoveman. In general terms it affirmed the decision of the Examiner as to the claims before us although, as above stated, the rejection of the Examiner of claims 7, 10, 33, and 34 was not upon Hyatt, but upon Bradley and Hoveman. However, a general affirmance by the Board of the rejection by the Examiner of all the claims involved in this appeal brings before us for review all the grounds of their rejection by the Examiner, as well as the grounds of rejection stated by the Board in its decision. In re Wagenhorst, 64 F. (2d) 780, 20 C. C. P. A. (Patents) 991.

We will first discuss the rejection by the Board of all the claims here involved upon the reference Hyatt in view of the teachings of Bradley or Hoveman.

The Board held, and appellant concedes, that both Bradley and Hoveman disclose aspirators. This being true, the Board held that it would not be "a matter of invention to substitute for the device in Hyatt by which the air and water are mixed an aspirator such as disclosed by either Bradley or Hoveman." We would observe that the teaching of Hyatt is upon a very different theory than the teaching of appellant. It was Hyatt's theory, as disclosed in his patent, that air and water were mixed for the purpose of bringing about chemical action between them. As hereinbefore quoted, his patent states:

"* * * It is well understood that when air and water are intimately combined there will be a chemical action, the water absorbing the oxygen of the air and the impurities in the water being consumed or rendered inert. * * *"

In order to afford sufficient time for such assumed chemical action to take place, Hyatt placed impediments in his tube to retard

the flow of water and air therethrough, such impediments consisting of a gravel bed, screens, and deflecting plates. While he states that all of these impediments are not necessarily used simultaneously, he clearly teaches that sufficient of them must be used to retard the flow of water and air through the tube in order that the assumed chemical action might take place.

On the other hand, appellant relies wholly upon mechanical action in his apparatus. His object is to dilute the foul gases in the water to a much greater extent than had ever been done in the prior art and to discharge them into the atmosphere. To accomplish this he depends upon the velocity of the flow of water and air through the U-tube and he teaches that the flow through the tube should not be impeded in any way, which is exactly contrary to the teaching of Hyatt. In his affidavit in the record, appellant states:

"To understand the necessity of reliable and efficient aeration, when water is violently agitated in the presence of air at about 60° Fahr. and at atmospheric pressure, 1,000 c/c of water will absorb or entrain approximately 17.9 c/c of air and/or gas. Normally about 12½ c/c will be absorbed by a litre of a liquid or 1,000 c/c of water will normally absorb about one-eightieth litre of air. One cubic foot of water will therefor contain 1/80 of 1,728 inches, or 21.6 cu. inches of air and/or gas. Take a proportion that in actual practice can be aspirated with the Allen U-tube aerator, namely, ½ cu. ft. air to 1 cu. ft. water, the results will be ½ of 1,728=864 cu. inches of air introduced, which product divided by 21.6 gives 40. This means that the original absorbed or contained foul air or gas is diluted about 40 times. As a portion of the diluted air and/or gas may remain absorbed, 39/40 of the original foul air will be exhausted above the level of the water in receiving basin. Any oxidation that occurs will further improve the condition of the remaining mixture."

Of course, if merely placing an aspirator in the Hyatt device would anticipate appellant's invention, we would be in agreement with the Board in its rejection of the involved claims, in view of the references Bradley and Hoveman, which disclose the use of aspirators. But it is clear that such simple modification would not render the claims here involved readable upon the Hyatt device so modified. To modify the Hyatt device in order that the claims here on appeal might read upon it, not only must an aspirator be placed therein, but all of the impediments in Hyatt's U-tube must be removed, which would be directly contrary to Hyatt's teaching. In view of this fact we do not think that it would be obvious to one skilled in the art so to modify the Hyatt device that the claims here involved would read upon it, whether the embodiment of Hyatt's invention embracing the use of gravel bed, screens, and deflecting plates be considered, or whether the second embodiment of his invention be considered, embracing a large number of small tubes within the large tube. In this second embodiment, a large number of small tubes are placed within practically the entire length of the U-tube, evidently for the purpose of retarding the flow of water and air through the U-tube by the internal friction exerted in such tubes, thus accomplishing the teaching of the patent that the flow of the air and water through the tube must be retarded in order that the assumed chemical action between the air and water may take place.

Finally, upon this phase of the case, we are of the opinion that, in view of this difference in teaching in the Hyatt patent and in appellant's application, and in view of the differences in the respective devices disclosed, the Board of Appeals erred in holding that appellant's claims would be met if Hyatt were modified by merely placing in his device an aspirator as shown by Bradley or Hoveman.

We have hereinbefore noted that, while the Board primarily relied upon the Hyatt patent in rejecting the involved claims, in view of Bradley or Hoveman, it also generally affirmed the decision of the Examiner. The Examiner rejected claims 7 and 10 upon Bradley and also upon Hoveman, and rejected claims 33 and 34 upon Hoveman alone. Originally, the Examiner also rejected claims 6, 8, and 9 upon Bradley and Hoveman, but as hereinbefore noted these claims were afterward considered by the Examiner in an amended form, and upon reconsideration were rejected by him only upon Hyatt in view of Bradley or Hoveman.

We therefore come to the consideration of whether the Board erred in affirming the Examiner's rejection of claims 7 and 10 upon Bradley, or as unpatentable over Hoveman, and of claims 33 and 34 upon Hoveman.

We are clear that said claims should not have been rejected upon Bradley. As here-

inbefore recited, his patent discloses that the mixture of air and water takes place in only one leg of his tube, and only the sterilized water passes upward through the discharge leg of the tube, if it may be called such. It is therefore apparent that there takes place no aeration of the water causing a dilution of the gases in the discharge leg of the tube such as is disclosed by appellant.

With respect to Hoveman, his discharge vessels are shown by the drawings as extending upward about one-third the height of his aeration chamber, the excess air being discharged through a pipe at the top of the chamber, and the water at the upper end of the sealing vessel into the aeration chamber. Hoveman discloses a plurality of down tubes, each extending nearly to the bottom of a "separate water filled seal vessel * * * of substantial depth." These tubes are not confined within a U-tube as in the second embodiment of Hyatt's invention, but extend into the aeration chamber. The patent refers to this element, which the Examiner held to be the equivalent of the discharge leg of a U-tube, as "the sealing vessels * * * surrounding the injectors." The patent states that "owing to the fact that all the sealing vessels are maintained full of water the escape of foul air upwardly through any of the injectors is effectively prevented." The Examiner held that it would not involve invention to extend these sealing vessels upwardly to a level just below the aspirator, and that the downflow tubes and said sealing vessels constituted the equivalents of U-tubes. While, as hereinbefore noted, the drawings of Hoveman show the sealing vessel as extending upward about one-third the height of the aeration chamber, it is interesting to note that his provisional specification contains the following:

"From the floor of the water inlet chamber a number of pipes having flared upper ends depend vertically into the aeration chamber where each dips nearly to the bottom of a separate vessel occupying *about two-thirds of the depth of the aeration chamber.*" (Italics ours.)

The distinctive difference between claims 6, 8, and 9, and claims 7, 10, 33, and 34 appears to be the limitation in said first group of claims that the discharge leg of the tube shall have approximately the same cross-sectional area as the downflow tube. This limitation is not found in claims 7, 10, 33, and 34.

As shown by the drawings, the Hoveman discharge vessels are of much greater cross-sectional area than his downflow tubes, and therefore claims 6, 8, and 9 would not read upon Hoveman even if the sealing vessels of the latter were extended upward to just below the aspirator. The Examiner held that it would not involve invention so to extend said sealing vessels. If Hoveman were so modified, claim 10 before us would read literally upon it, and as to claims 7, 33, and 34, we are of the opinion that, if Hoveman was modified as last above indicated, said claims would be anticipated by Hoveman. The question therefore is whether it would involve invention to extend Hoveman's sealing vessels to just below his aspirator. We agree with the Examiner that it would not, so far as claims 7, 10, 33, and 34 are concerned, especially in view of the fact that in Hoveman's Figure 1 the discharge pipe for the foul gases and excess air is placed just below his aspirator.

Inasmuch as said claims 7, 10, 33, and 34 are so broad as to permit the upflow tube to have a much greater cross-sectional area than the downflow tube, these claims are clearly distinguishable from claims 6, 8, and 9, and we are of the opinion that there was no error in rejecting the former group upon Hoveman.

The decision of the Board of Appeals is affirmed as to claims 7, 10, 33, and 34, and reversed as to claims 6, 8, and 9.